IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TREVOR SCOTT RILEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-1519-BK |
| | § | |
| CAROLYN COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Pursuant to the parties' consent to proceed before the magistrate judge, Doc. 13, this case has been transferred to the undersigned for a final ruling. The Court now considers the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 20, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 21, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

### I.     BACKGROUND[1]

**A.     Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("the Act"). In August 2011, Plaintiff filed for SSI and DIB, claiming that he became disabled in January 2009. Doc. 12-6 at 2, 11. His application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 12-3 at 2-4, 11-19; Doc. 12-5 at 2.

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

B.     **Factual Background**

Plaintiff was 42 years old at the time of the administrative hearing and had completed two years of college.  Doc. 12-3 at 28-29.  Medical records indicate that Plaintiff was injured in a motor vehicle accident in February of 2001, during which he suffered a traumatic brain injury, underwent significant surgery to both legs due to multiple fractures, and received physical therapy.  Doc. 12-9 at 24; Doc. 12-8 at 45-74; Doc. 12-10 at 9-12, 15-16.  By the time of his discharge from the hospital to inpatient rehabilitation, his pain was largely well-controlled with medication.  Doc. 12-10 at 74-75.

At a November 2011 consultative examination, Plaintiff reported that he had not had any orthopedic reevaluation over the past eight to nine years due to a lack of insurance.  Doc. 12-11 at 6.  The examining physician, Dr. Robert Silverman, noted that Plaintiff reported pain involving his buttocks, hips, thighs, knees, shins, and ankles, and stated that, due to the severe pain, he needed to move his legs and change positions constantly.  Doc. 12-11 at 6.  Plaintiff said that he had a high pain threshold and did not like to take medication, but he could only stand for two minutes, sit for one minute, and walk 50 feet on a good day.  Doc. 12-11 at 6.  The physical examination revealed a full range of motion in the hips, a reduced range of motion in both knees limited to 90 degrees flexion, and decreased range of motion in the ankles limited to 20 degrees.  Doc. 12-11 at 7.  Plaintiff exhibited tenderness in various areas of his bilateral lower extremities, a moderately antalgic gait, moderate difficulty getting on and off the exam table, and an inability to heel-walk, toe-walk, tandem-walk, squat, or hop.  Doc. 12-11 at 7.  Plaintiff was assessed with posttraumatic, postoperative leg pain, and Dr. Silverman concluded that his prognosis was guarded.  Doc. 12-11 at 6.  A November 2011 x-ray of Plaintiff's right knee showed that the femur rod appeared to be in place, but there was "questionable lucency around the distal screw,

which would suggest loosening." Doc. 12-11 at 9. There was no suggestion of significant degenerative change or bone erosion. Doc. 12-11 at 9.

State agency physician, Dr. Roberta Herman completed a Physical Residual Functional Capacity Assessment, limiting Plaintiff to standing/walking two to four hours due to leg pain; sitting for six hours; never climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs, kneeling, crouching, and crawling; and frequent balancing and stooping. Doc. 12-11 at 11-12. She noted that Plaintiff was able to engage in several activities of daily living, such as taking care of his personal needs, cooking complete meals, doing housework, going outside every day, driving a car, grocery shopping, and spending time with others. Doc. 12-11 at 17.

In June 2012, Plaintiff visited the Hope Clinic complaining of pain from his hips down and asking that his disability papers be filled out. Doc. 12-11 at 24. He reported that his pain was ten on a ten-point scale, and simple ambulation caused him the most difficulty. Doc. 12-11 at 25. He had a limited range of motion in his bilateral lower extremities, including limited to no range of motion in either knee, although his joints, muscle strength, and muscle tone were all noted as being normal. Doc. 12-11 at 25-26. He was prescribed several medications. Doc. 12-11 at 27. In September 2012, Plaintiff returned to the clinic for knee swelling and low back pain, complaining that the pain was impacting his daily activities and making it difficult for him to get out of bed. Doc. 12-11 at 22. He exhibited joint tenderness, but his back exam was normal and he had normal muscle strength. Doc. 12-11 at 22. He was continued on various medications and directed to exercise with his arms or in water. Doc. 12-11 at 23. In October 2012, Plaintiff presented for follow-up treatment at the clinic for back and knee pain. Doc. 12-11 at 9. It was noted that he had an abnormal gait and was using a cane, but on examination, he had full range of motion and strength in all of his lower extremities, normal sensation and reflexes, and no joint

or muscle tenderness.  Doc. 12-11 at 19.  He was continued on various medications and given a handout on knee strengthening exercises.  Doc. 12-11 at 20.

**C.      ALJ's Decision**

In February 2013, the ALJ issued a decision, finding at step one of the sequential evaluation process that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 2009, although he had worked for over ten years after he recovered from his car accident and had been laid off from his most recent job, thereafter receiving unemployment compensation for an extended period of time.  Doc. 12-3 at 13, 16.  Next, the ALJ determined that Plaintiff had the severe impairment of posttraumatic, postoperative leg pain.  Doc. 12-3 at 13.  The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment under the regulations.  Doc. 12-3 at 14.  Next, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of light work in that he could lift ten pounds frequently and 20 pounds occasionally, stand and/or walk two to four hours in an eight-hour workday, but stand/walk for two hours some days and four hours on some days, and that he could sit for six hours in an eight-hour workday.  Doc. 12-3 at 16.  The ALJ found that Plaintiff was unable to perform any of his past relevant work.  Doc. 12-3 at 17.  However, based on Plaintiff's age, education, work experience, RFC, and vocational expert ("VE") testimony, the ALJ determined that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, namely as a ticket seller, photocopy machine operator, or charge account clerk.  Doc. 12-3 at 18.  Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.  Doc. 12-3 at 18-19.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III.  ARGUMENT AND ANALYSIS

1. *Whether the ALJ Erred in Assessing Plaintiff's RFC*

Plaintiff argues that the ALJ erred in assessing his RFC because he failed to include all of his limitations. Specifically, the evidence demonstrates that Plaintiff cannot perform the standing/walking requirements of light work as he cannot stand/walk for six hours a day. Doc. 20 at 3-4. Rather, Plaintiff can only meet the strength demands for sedentary work. Doc. 20 at 6.

Defendant responds that the ALJ properly determined Plaintiff's "greatest capability" to work despite any limitations the ALJ found he had. Doc. 21 at 8. Here, Defendant asserts, the ALJ correctly found that Plaintiff had the ability to perform work between the sedentary and light work levels and utilized the VE's testimony to determine that suitable jobs for Plaintiff exist in the national economy. Doc. 21 at 8-9.

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis, in an ordinary work setting, despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). RFC refers to the

most that a claimant can do despite his physical and mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC is considered by the ALJ, along with the claimant's age, education, and work experience, in determining whether a claimant can work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant has both exertional and nonexertional impairments and the nonexertional limitations significantly affect his RFC, then the ALJ must base his findings on a VE's testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); *cf.* *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985) (holding that the Grids were improperly applied when the claimant asserted that she could not sit or stand for prolonged periods of time).

As an initial matter, the ALJ in this case did not find that Plaintiff could stand/walk for six hours a day.  Rather, the ALJ determined that Plaintiff could stand and/or walk for between two to four hours in an eight-hour workday depending on the day.  Doc. 12-3 at 16.  The ALJ then properly solicited VE testimony to determine whether Plaintiff could perform jobs that exist in significant numbers in the national economy given Plaintiff's limitations because Plaintiff's RFC fell between light work and sedentary work.  *Fraga*, 810 F.2d at 1304.  Accordingly, Defendant is entitled to summary judgment on this issue.

2.   *Whether the ALJ Erred in Relying on the VE's Testimony*

Plaintiff next argues that the ALJ erred by not asking the VE whether her testimony was consistent with the occupational evidence contained in the Dictionary of Occupational Titles ("DOT") provisions, and in fact, the VE's testimony conflicted with the DOT because light work requires that an individual be able to stand/walk for at least six hours in a workday.  Doc. 20-1 at 7-8.

Defendant responds that Plaintiff's argument is meritless because the ALJ included in his hypothetical to the VE the limitations that the record supported.  Doc. 21 at 9.  Moreover, Plaintiff's counsel did not question the VE about the jobs and any purported conflict with the DOT provisions and, therefore, should not be heard to do so now.  Doc. 21 at 10, 12.

The burden of proof to establish that Plaintiff can perform other work in the national economy lies with the Commissioner.  See *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002) (holding that the plaintiff has the burden of proof at steps one through four of the sequential evaluation, but that burden shifts to the Commissioner at step five of the sequential evaluation).  Social Security Ruling 00-4p requires the ALJ to elicit a reasonable explanation for conflicts existing between a VE's testimony and the information included in the DOT.  Specifically, "[w]hen vocational evidence provided by a VE . . . is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled."  Soc. Sec. Rul. 00-4p, 2000 WL 1898704.  Nevertheless,

> claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).

In this case, the ALJ presented a hypothetical question to the VE, asking whether work existed for an individual of Plaintiff's age, education, and RFC for a restricted range of light work.  Doc. 12-3 at 48-49.  Contrary to Plaintiff's suggestion, the ALJ was not required to ask the VE whether Plaintiff could perform all required job duties entailed in a full range of light work because the ALJ already had found that Plaintiff could not perform all such duties – thus

8

the need for obtaining VE testimony in the first place. *Fraga*, 810 F.2d at 1304; *Lawler*, 761 F.2d at 198. Moreover, Plaintiff's counsel asked no questions about the jobs the VE identified for the assessed RFC, but only questioned the VE about other limitations Plaintiff had. Doc. 12-3 at 50-51. Thus, Plaintiff will not now be permitted to argue that the VE's testimony conflicted with the DOT's provisions. *Carey,* 230 F.3d at 146-47. Accordingly, Defendant is entitled to summary judgment in her favor on this issue.

## CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 20, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 21, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

SIGNED March 12, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE